UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JO-ANN CONNELLY, | ) | 3:25-CV-00206 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM TONG, *et al*, | ) | |
| *Defendants*. | ) | March 31, 2026 |

### ORDER AND RULING ON MOTIONS TO DISMISS, MOTION TO AMEND COMPLAINT, AND MOTION FOR PRELIMINARY INJUNCTION

Sarala V. Nagala, United States District Judge.

Plaintiff Jo-Ann Connelly alleges that Defendants, state and municipal officials,[1] conducted a warrantless search of her property, seized and redistributed her animals, and wrongfully pursued civil and criminal legal proceedings against her, violating her Fourth, Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendment rights and defaming her in the process. *See* Redacted Compl., ECF No. 20. Although Plaintiff does not expressly invoke 42 U.S.C. § 1983, the Court construes her *pro se* complaint as asserting constitutional claims under that statute. The State and Municipal Defendants have moved to dismiss the original complaint on various grounds. Municipal Defendants' Mot. to Dismiss Memo. of Law, ECF No. 48; State Defendants' Mot. to Dismiss Memo. of Law, ECF No. 51. Plaintiff opposes both motions, ECF Nos. 53, 54, 55.[2]

---

[1] The named Defendants in this action are: Attorney General William Tong; Assistant Attorney General Daniel Salton, Commissioner of Agriculture Bryan P. Hurlburt; Department of Children and Families ("DCF") employees Susan Rooke and Vanessa Dorantes; DCF investigator Berta Ramos; State Police Officers Reed, Coit, Ruppar, Cormier, and Samae; Animal Control Officers ("ACOs") Tanya Wescovich, Charles Della Rocca and Jeremiah Dunn; Superior Court Judge Matthew Budzik, and three state agencies: the Connecticut Department of Agriculture, Connecticut Department of Children and Family Services, and Connecticut State Police Troop K (together, "the State Defendants"), as well as Hebron Animal Control Officer William Bell, Hebron Police Officer Ricardo Martinez, and Hebron Town Manager Andrew Tierney ("the Municipal Defendants"). ECF No. 20 at 3, 12–13.

[2] Plaintiff filed three memoranda in opposition to the Motions to Dismiss. Each memorandum contains largely the same substantive content, but all are slightly different from one another. In light of Plaintiff's *pro se* status, and the fact that Plaintiff has not separated her responses to the Municipal Defendants from her responses to the State Defendants (and instead has provided three variations of a combined argument), the Court will consider the arguments raised in all three memoranda.

Plaintiff has also filed a motion to amend her complaint, ECF No. 62, and a motion for a preliminary injunction, ECF No. 74. Defendants have opposed both motions. ECF Nos. 63, 64, 75, 76.

For the reasons described below, the Court DENIES AS MOOT the motions to dismiss directed at the original complaint, though it analyzes the arguments set forth in those motions to guide Plaintiff in this litigation going forward. The Court GRANTS IN PART Plaintiff's motion for leave to amend, with respect to one claim advanced in the proposed amended complaint. Because the Court lacks jurisdiction to grant any of Plaintiff's requested injunctive relief, her motion for a preliminary injunction is DENIED.

As explained below, Plaintiff has the option to proceed with the one claim from the amended complaint that is not futile. Alternatively, she may file a second amended complaint consistent with this ruling.

## I.    FACTUAL BACKGROUND

The following facts, alleged in Plaintiff's complaint unless otherwise noted, are accepted as true for the purpose of evaluating Defendants' motions to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[3]

A. Department of Children and Families Home Visit

Plaintiff alleges that in 2021, her ex-husband made false allegations to the Connecticut Department of Children and Families ("DCF"), and on February 9, 2022, a court authorized a one-time visit to Plaintiff's home. ECF No. 20 at 7.

---

[3] The Court notes that Plaintiff failed to comply with Fed. R. Civ. P. 10(b) in her original complaint, as she did not state her claims in numbered paragraphs. Going forward, Plaintiff must fully comply with all relevant rules.

Before the home visit occurred, on March 14, 2022, Plaintiff's minor daughter was hospitalized in relation to a violent outburst against Plaintiff.  *See id*.  Plaintiff believes that the state charged, or was planning to charge, her daughter in relation to her violence against Plaintiff.  *See id.*  Plaintiff alleges that while hospitalized, her daughter met with DCF without Plaintiff's knowledge, and that her daughter later assisted DCF in actions leading to Plaintiff's arrest in exchange for dismissal of charges against the daughter.  *Id*.

On March 20, 2022, Plaintiff's property in Hebron, CT, flooded, causing Plaintiff to rent an Airbnb for 30 days.  *Id*.  Regardless, Plaintiff spent most of her time at the Hebron property, cleaning up in the aftermath of the flood and caring for the many animals housed there.  *Id*.  Between March 21 and 22, 2022, two social workers with DCF made separate home visits to Plaintiff's Airbnb rental.  *Id.*  One of the social workers, Susan Rooke, subsequently made a claim to State Animal Control that Plaintiff had abandoned her animals at the Hebron residence.  *Id*.

B.  <u>Search of Hebron Property and Plaintiff's Arrest</u>

On March 23, 2022, five Defendants—Connecticut State Troopers Samae, Reed, Ruppar, Coit, and Cormier—cut the locked gate at Plaintiff's Hebron home and entered the property while she was present.  *Id*.  When Plaintiff confronted State Troopers Reed and Samae, they stated they were "with DCF" and had a court-ordered warrant to search her home and property.  *Id*.  When Plaintiff asked to see the warrant, Troopers Reed and Samae "ambushed," "forcibly handcuffed," and dragged her down the stairs, with assistance from Troopers Ruppar, Coit, and Cormier.  *Id*.  Plaintiff's request to call her attorney was initially denied by the five state troopers.  *Id.*  Plaintiff was then forced to stand in one spot while "multiple officers grabb[ed] [] and push[ed] her to keep her in that one place."  *Id*.  Plaintiff repeatedly asked the officers to remove the handcuffs because her hands and shoulders hurt, a request the Defendants ignored.  *Id*.  Despite exhibiting "absolutely

3

no aggressive behavior towards the government workers," Plaintiff sustained injury to her right shoulder and left hip due to the restraints used by the state troopers. *Id.*

Defendant Susan Rooke, a DCF worker, arrived after Plaintiff was handcuffed, claiming to be there to complete a home visit to check on Plaintiff's daughter. *Id.* at 7–8. Plaintiff believes this visit was unnecessary because her daughter was discharged from the hospital and seen by DCF on March 21 and visited by her counsel on March 22. *Id*. at 8.

Soon thereafter, Defendants State Animal Control Officer ("ACO") Tanya Wescovich and Hebron ACO William Bell arrived, claiming they were there to conduct a "visit" and provide backup to DCF. *Id*. at 4, 8. They then proceeded to search Plaintiff's "home, out buildings and motor vehicle" and take photographs. *Id*. at 8. Around the same time, Plaintiff was permitted to call her attorney, who then had an audio-recorded phone conversation with Trooper Samae. *Id.* Plaintiff claims that, on the audio recording, the ACOs can be heard "admitting they had no warrant." *Id*. According to Plaintiff, the ACOs' observations were subsequently used to support an application for a search warrant for the Hebron property dated March 24, 2022. *Id*.

Plaintiff does not describe the conclusion of the incident on March 23 or under what circumstances the state troopers, DCF employees, or ACOs left her property.

Two days later, on March 25, 2022, ACOs Della Rocco, Wescovich, and Bell, along with several other town ACOs, arrived to seize Plaintiff's animals. *Id.* Defendant Hebron Police Officer Ricardo Martinez and Defendant State Trooper Bryce Reed, with guns drawn, "kicked in the front door" of Plaintiff's home and arrested her on animal abuse-related charges. *Id*. Plaintiff further alleges that the ACOs then seized control of all Plaintiff's animals from the property. *Id*.

Plaintiff was charged with multiple misdemeanors.[4]  *Id.* at 8.  At the time of Plaintiff's arrest, Officer Martinez and Officer Reed refused to allow her to retrieve her bank or debit card so she could post bond.  *Id.*  She alleges that this denial resulted in her being sent to a Niantic prison for three nights.  *Id.*

On one of the occasions on which state officials entered Plaintiff's home, they allegedly left Plaintiff's property unsecured, allowing rodents to infest the house and creating significant damage.  *Id.* at 6.  Several of Plaintiff's items, including jewelry, were damaged or stolen after an ACO searched her home.  *Id.*   Officers also allegedly gave away a "truckload" of rescue puppies presumably found on the property without charging adoption fees due to rescue organizations.  *Id.* Plaintiff does not specify the date of these events, but the Court presumes the puppies were taken on March 25, 2022, when the other animals were seized.

Members of the media were present to document Plaintiff's arrest, resulting in the incident being "broadcast across the country (and further)."  *Id.* at 8.  Plaintiff alleges that State workers contacted local media to show up and broadcast her arrest and the seizure of the animals in an effort to taint a future jury pool and damage Plaintiff's reputation.  *Id.*  Later, Attorney General William Tong publicly discussed Plaintiff's case, identifying Plaintiff as an animal and child abuser.  *Id.* at 10.

Following her arrest, Plaintiff alleges that officials from DCF took temporary custody of her minor child, despite her stated preference that the child remain with family friends.  *Id.* at 8. Plaintiff suggests that DCF intentionally caused her to be arrested so they could take temporary

---

[4] Plaintiff alleges she was charged with three misdemeanors.  *Id.* at 8.  According to the docket in Plaintiff's criminal case in the Connecticut Superior Court, of which this Court may take judicial notice, seventy-one misdemeanor animal cruelty charges have been filed against Plaintiff.  *See* Conn. Judicial Branch, Dkt. No. T19R-CR22-0185919-S, jud2.ct.gov/crdockets/CaseDetail.aspx?source=Pending&Key=1ba0a167-6c60-4a52-b35f-adb6df4c631b (last visited March 31, 2026); *Musciotto v. Nardelli*, No. 3:19-CV-559 (KAD), 2019 WL 5086691, at *2 (D. Conn. Oct. 10, 2019) (The Court may take judicial notice of "pleadings, orders, judgments, and other documents from prior litigation, including state court cases.") (internal quotations omitted).

custody of her daughter, and coordinated conditions of release that prohibited Plaintiff from speaking to her child. *Id.*

C. State Civil and Criminal Proceedings

The Court takes judicial notice of the docket and filings in Plaintiff's state court civil and criminal actions. *Musciotto*, 2019 WL 5086691, at \*2 (internal quotations omitted); *see also Lively v. WAFRA Inv. Advisory Grp., Inc.,* 6 F.4th 293, 305 (2d Cir. 2021); *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006).    Thus, although Plaintiff does not provide details about the process and outcome of the state civil proceedings, the Court summarizes them here, before returning to the complaint to describe the alleged deficiencies in the proceedings.

According to the public state court docket, the State of Connecticut initiated a civil action against Plaintiff to obtain custody of the seized animals, in addition to the criminal charges brought against Plaintiff.[5]  Defendant AAG Salton represented Defendant Department of Agriculture in this proceeding. *See* ECF No. 20 at 8; ECF No. 51 at 5.  The Superior Court held an initial hearing on April 29, 2022, at which Plaintiff stipulated to the temporary care of the animals being vested in the Department of Agriculture. ECF No. 51-1 at 1, n.1.  Plaintiff subsequently withdrew her stipulation. *Id.*  On May 26, 2022, a virtual civil hearing was held in the Connecticut Superior Court regarding the State's application for temporary custody of the seventy-one animals seized from the Hebron property. *Id.* at 1.  The seized animals included thirty-three dogs, twenty-eight cats, five ducks, three goats, one parakeet, and one pony. *Id.*  After the hearing, the court issued a written ruling vesting temporary custody of the animals with the State. *Id.*  at 4.

On October 18, 2022, a virtual civil hearing was held on the State's application for permanent custody, at which the court took judicial notice of the testimony presented at the prior

---

[5] Memo. of Decision, Dkt. No. 146, Conn. Judicial Branch Dkt No. HHD CV-22-6154457-S (Conn. Super. Ct. Dec. 13, 2022).  Defendants have submitted this decision at ECF No. 51-1.

hearing and entered the evidence presented by the state as full exhibits.  ECF No. 51-4 at 1.  On December 13, 2022, the court reaffirmed its prior findings of fact and conclusions of law and granted permanent custody to the State.  *Id.*  The Court found that Plaintiff "abused, neglected, and cruelly treated the subject animals" by "fail[ing] to give the subject animals 'proper care' and provide them with 'wholesome air,'" as those terms are defined by statute.  *Id.* at 2.  It also ordered Plaintiff to pay the expenses incurred by the State in providing proper food, shelter, and care to the subject animals.  *Id.* at 3.

Published court orders also indicate that the Connecticut Appellate Court unanimously affirmed the judgment on October 8, 2024; the Connecticut Supreme Court denied Plaintiff's petition for further appellate review on December 17, 2024, and the United States Supreme Court denied Plaintiff's petition for a writ of certiorari on October 6, 2025.  *State ex rel. Dunn v. Connelly*, 228 Conn. App. 458, *cert. denied*, 350 Conn. 933 (2024), *cert denied* 146 S. Ct. 119, 2025 WL 2823830 (U.S., Oct. 6, 2025).

In her complaint, Plaintiff alleges that she was not given sufficient due process in the initial civil proceeding that occurred on April 29, 2022.  ECF No. 20 at 8–9.  Specifically, Plaintiff alleges she was left in a conference room until the end of the hearing, preventing her from fully observing or participating in parts of the proceeding, and she was not personally permitted to present evidence, call witnesses, or contest the claims.  *Id.*  Plaintiff's expert witness was not permitted to speak freely by Assistant Attorney General Salton or Judge Budzik.  *Id*. at 9.  Throughout the proceedings, the state's attorney referred to the March 23 incident as a "visit," even though there had been no court order permitting such a visit and none had been scheduled.  *Id.* at 4–5.  The state also referred to Plaintiff's Hebron residence as a "shelter," which Plaintiff believes was used to justify warrantless entry onto her property.  *Id.*  The State Attorney's Office did not release police

officer body camera footage, despite a Freedom of Information Act request, until July or August of 2022. *Id*. at 9. When the footage was released, it was heavily redacted, with more than twenty hours of missing footage. *Id*.

Plaintiff further alleges that several of her animals have died or suffered harm while in state custody. *Id.* Specifically, her parakeet died two weeks after the seizure, despite previously being healthy. *Id.* Plaintiff asserts the bird was starved to death in state custody. *Id.* Plaintiff's dogs have been kept in state shelters, which have failed to provide for the animals' basic needs, including adequate food and water, clean and temperature-controlled shelter, veterinary care, and adequate exercise. *Id.*

Plaintiff's criminal case relating to the animal cruelty charges is still pending in the Connecticut Superior Court.[6] At the time of the filing of the complaint, nearly two years had passed since Plaintiff requested a jury trial. ECF No. 20 at 9. During this time, Plaintiff's animals have remained in state custody, and the state has charged Plaintiff fees, presumably related to the State's care of the animals, totaling more than $300,000. *Id*. at 6, 9.

D.  The Present Action

In the present action, Plaintiff names as Defendants three state agencies and various individuals employed by state and municipal government. Plaintiff's complaint does not specify whether the individual Defendants are being sued in their official or individual capacities.

The Court construes Plaintiff's original complaint as raising six claims for violations of her constitutional rights and one claim for defamation under state law. Although Plaintiff does not expressly invoke 42 U.S.C. § 1983, the Court construes her *pro se* complaint as asserting constitutional claims under that statute. Plaintiff's claims are summarized as follows:

---

[6] *See* Conn. Judicial Branch, Dkt. No. T19R-CR22-0185919-S (describing case as "awaiting disposition").

- Fourth Amendment: Plaintiff alleges government officials conducted a warrantless entry onto her property on March 23, 2022, without emergency or exigent circumstances, in violation of the Fourth Amendment's protection against unreasonable searches and seizures. ECF No. 20 at 4. She also alleges that her property was damaged when it was left unsecured by officers. *Id.* at 6. Plaintiff further contends that her property interest in rescue puppies owned by CT Pregnant Dog and Cat Rescue was violated when the puppies were removed and then distributed to members of the public without application procedures, background checks, or adoption fees, which the Court construes as a claim for loss of property in the execution of an arrest warrant under the Fourth Amendment. *Id.*; *see Radice v. Doe*, No. 3:24-CV-531 (VAB), 2024 WL 3429345, at *2 (D. Conn. July 14, 2024).

- Fifth Amendment: Plaintiff alleges that the state financially benefited from the fines and fees associated with caring for her animals while in state custody, violating her right to due process. ECF No. 20 at 4.

- Sixth Amendment: Plaintiff alleges she was denied her Sixth Amendment right to a speedy jury trial. *Id.* She also contends that the State's contacting of local media tainted the jury pool, infringing her Sixth Amendment right to an impartial jury trial. *Id.* at 8.

- Seventh Amendment: Plaintiff claims her Seventh Amendment right to a jury trial in a civil case has been denied despite the amount in controversy exceeding twenty dollars. *Id.* at 4.

- Eighth Amendment: Plaintiff claims the State imposed excessive fines by charging her tens of thousands of dollars in fees for animal care while providing substandard care or failing to provide proof of life. *Id.* And Plaintiff alleges the removal of living property, her domesticated animals, constitutes cruel and unusual punishment. *Id.*

- Fourteenth Amendment: Plaintiff claims deprivation of life, liberty, and property without due process in her state civil proceedings. *Id.* The Court also construes her claims concerning the death of various animals after they were seized as raising a claim for destruction of property without due process of law. *See Radice*, 2024 WL 3429345, at *2.[7]

- Defamation: Plaintiff claims the State damaged her reputation by contacting local media and through Attorney General William Tong's public discussion of Plaintiff's case. *Id.* at 8, 10.

---

[7] Plaintiff's complaint could also be construed as raising a claim of excessive force, in violation of the Fourteenth Amendment, in connection with her encounter with law enforcement on March 23, 2022. As her submissions do not seem to advance a claim of excessive force, however, the Court does not address this issue further.

9

Plaintiff seeks an injunction ordering her animals returned to her, the animal cruelty charges dropped, and all fees associated with her case waived. ECF No. 20 at 10. She also requests attorney's fees, the return of bond money, waiver of animal care fees accumulated from state custody of the animals, and damages for excessive fines, property damage, lost adoption fees, and missing jewelry. *Id.* at 6, 10. Finally, she requests a public apology and acknowledgement of wrongdoing by the state. ECF No. 20 at 10.

Defendants seek to dismiss the original complaint on the following bases. First, the State Defendants argue that they are entitled to Eleventh Amendment immunity as to Plaintiff's requests for monetary and injunctive relief, insofar as they are sued in their official capacities. *See* ECF No. 51 at 7–14. The State Defendants also argue that the Court should abstain from ruling on Plaintiff's requests for injunctive relief related to her ongoing state criminal case under *Younger v. Harris*, and that her claims are barred by the *Rooker-Feldman* doctrine to the extent they claim injuries based on the state court civil action. *Id.* at 14–17. They further argue Plaintiff's claims against Defendant Dorantes are moot since she is no longer the DCF Commissioner and that Defendants Attorney General Tong and Assistant Attorney General Salton are entitled to prosecutorial immunity and Defendant Judge Budzik is entitled to judicial immunity. *Id.* at 17–22.

The Municipal Defendants assert similar *Rooker-Feldman* and *Younger* abstention arguments, and further argue that Plaintiff fails to state claims against Hebron Town Manager Defendant Tierney and Hebron Police Officer Ricardo Martinez. ECF No. 48.

While Defendants' motions to dismiss were pending, Plaintiff moved for leave to amend her complaint. *See* Mot. for Leave to Am., ECF No. 62. Defendants oppose the proposed amendments. Municipal Defs.' Opp. Br., ECF No. 75; State Defs.' Opp. Br., ECF No. 76.

## II.   MOTIONS TO DISMISS

As noted above and below, based on the Court's ruling with respect to Plaintiff's motion for leave to amend, it denies Defendants' motions to dismiss the original complaint as moot.  As the Court's analysis of the arguments advanced by Defendants will assist the parties going forward, however, it proceeds to address Defendants' arguments and Plaintiff's responses.

First, the Court must address Defendants' arguments that relate to the Court's subject matter jurisdiction.  Subject matter jurisdiction can never be forfeited or waived; thus, the Court has an independent obligation to satisfy itself of its jurisdiction.  *Stafford v. Int'l Bus. Machines Corp.*, 78 F.4th 62, 68 (2d Cir. 2023) (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) and *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 92 (2d Cir. 2019)).  Where a district court lacks the statutory or constitutional power to adjudicate a case, dismissal for lack of subject matter jurisdiction is appropriate.  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff."  *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000).

As discussed further below, the Eleventh Amendment and sovereign immunity bar this Court from exercising subject matter jurisdiction over Plaintiff's request for damages against the State Defendants in their official capacities, including the state agencies.  Plaintiff's request for an order directing the State to issue an apology and acknowledge wrongdoing is likewise barred as a request for retrospective injunctive relief.

Additionally, the *Rooker-Feldman* doctrine bars this Court from taking jurisdiction over Plaintiff's claims implicating the state civil proceedings.  And, under *Younger v. Harris*, it would

11

be inappropriate for the Court to exercise jurisdiction to interfere with Plaintiff's ongoing state criminal proceedings.

A. Initial Considerations: Capacity in Which Defendants Have Been Sued

As an initial matter, the Court notes that Plaintiff's complaint seeks both injunctive relief and monetary damages, and Plaintiff does not specify—in her complaint or her responses to Defendants' motions to dismiss—whether she sues Defendants in their individual or official capacities. "[W]here a *pro se* litigant does not specify in what capacity the individual defendants are being sued, courts [in this Circuit] generally liberally construe the complaint as alleging both official and individual capacity claims." *Anderson v. Pedalty*, No. 14–CV–00192, 2015 WL 1735192, at *3 (W.D.N.Y. Apr. 16, 2015)); *McCloud v. Kane* 491 F. Supp. 2d 312, 316 (E.D.N.Y. 2007).

But here, the non-agency State Defendants contend that they are sued, and were served, only in their official capacities. *See* ECF No. 51 at 6–7. Indeed, counsel has appeared for the State Defendants in their official capacities only. *Id.* The proofs of service for the State Defendants support their contention that they are sued only in their official capacities, as they were served at their respective state offices. *See* Proofs of Service, ECF No. 16 (Defendant Dorantes served at DCF; Defendant Salton served at Attorney General's Office); ECF No. 17 (Defendant Tong served at Attorney General's Office; Defendants Wescovich and Della Rocco served at State Department of Agriculture; Defendant Budzik served through Jocelyne Greguoli [8]); ECF No. 24 (State Trooper Defendants served at address for Connecticut Department of Emergency Services and Public

---

[8] Ms. Greguoli is listed in the Connecticut Judicial Branch directory as secretary to the judges in the New Britain Judicial District. *See* Conn. Judicial Branch, Directory 2026, https://jud.ct.gov/directory/JudDir.pdf (last visited March 31, 2026).

Protection and Defendants Ramos and Rooke served at DCF office).[9]  Although Plaintiff's motion for leave to amend her complaint clarifies that she seeks to sue certain State Defendants in their individual capacities, *see, e.g.,* ECF No. 68 at 10, she did not express this intent in connection with the State Defendants' motion to dismiss the original complaint.  Thus, absent further clarification from Plaintiff, the Court construes the original complaint as suing the State Defendants in their official capacities only.

The Court construes the complaint as suing the Municipal Defendants only in their individual capacities, however.  The Municipal Defendants do not distinguish between their official and individual capacities in their briefing, and Plaintiff's response does not afford clarification on this point.  But because Plaintiff has not adequately pleaded any official capacity claims against the Municipal Defendants, the Court construes the complaint as being brought against them in their individual capacities only.

"Section  1983 claims  against municipal employees sued in  their official capacity are treated as claims against the municipality itself."  *Seri v. Town of Newtown*, 573 F. Supp. 2d 661, 671 (D. Conn. 2008) (citing *Patterson v. County of Oneida, N.Y.,* 375 F.3d 206, 226 (2d Cir. 2004)); *Brandon v. Holt,* 469 U.S. 464, 471–72 (1985).  Thus, to assert a viable claim against a municipal employee in his or her official capacity, the plaintiff must demonstrate that the

---

[9] Pursuant to Conn. Gen. Stat. § 52-64, state employees sued in their official capacity must be served by leaving a copy of the complaint and summons, or mailing the same by certified mail, to the Attorney General's Office.  By contrast, individual capacity service is effected by leaving a copy of the process with the defendant or at his or her usual place of abode.  Conn. Gen. Stat. § 52-54.  Here, the proofs of service demonstrate that the State Defendants were served at state offices; only two were served at the Attorney General's Office.  Despite that service was not accomplished pursuant to § 52-64 at the Attorney General's office for the majority of the State Defendants, counsel has appeared on their behalf in their official capacities and has not challenged official capacity service as defective.  Likewise, although the proof of service for Defendants Dunn and Samae were returned as unexecuted, *see* ECF Nos. 18 & 21, counsel has appeared on behalf of these Defendants and has not challenged service as defective.  The Court therefore considers waived any argument that official capacity service on the State Defendants was defective.  *See* Fed. R. Civ. P. 12(h)(1) (noting that a party waives a defense under Rule 12(b)(5) for insufficient service of process by failing to make it in a motion under Rule 12).

municipal official was acting pursuant to an official, unconstitutional "policy or custom." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *see also Seri*, 573 F. Supp. 2d at 671. Plaintiff does not assert any facts at all suggesting the Town of Hebron has a "policy or custom" of unconstitutional behavior. Rather, Plaintiff's allegations regarding the conduct of ACO Bell and Officer Martinez do not go beyond the facts of *her* own arrest to suggest she is challenging any practice of the Town.

Additionally, Plaintiff makes no direct allegations against Defendant Tierney, but indicates in her opposition brief that she believes he is subject to supervisory liability. *See* ECF No. 54 at 2 (Tierney "was William Bell's direct supervisor and was therefore responsible for allowing the illegal entry onto the Plaintiff's property"). Supervisory liability, to the extent it is cognizable, may be imposed against supervisory officials in their *individual* capacities only, if they were personally involved in the constitutional violation. *Condon v. Town of Brookfield*, 747 F. Supp. 3d 354, 365 (D. Conn. 2024); *see also Tangreti v. Bachman*, 983 F.3d 609, 616 (2d Cir. 2020).

While the Court should—and does—construe Plaintiff's complaint broadly to raise the strongest claims it suggests given her *pro se* status, the Court cannot read *Monell* allegations into the complaint that are simply not supported by any facts alleged. *Sykes v. Bank of America.*, 723 F.3d 399, 403 (2d Cir. 2013) ("[P]ro se complaints must be construed liberally and interpreted to raise the strongest arguments that they suggest."); *Costabile v. New York City Health & Hosps. Corp.*, 951 F.3d 77, 82 n.27 (2d Cir. 2020) ("Even for a *pro se* complaint, we cannot invent factual allegations that [the plaintiff] has not pled." (citation omitted)). Accordingly, the Court will treat the Municipal Defendants as sued in their individual capacities only.

B. Sovereign Immunity:  State Defendants

Under the Eleventh Amendment and principles of state sovereign immunity, the Court does not have jurisdiction over Plaintiff's damages claims against the State Defendants, or Plaintiff's request for an order directing the State to issue an apology and acknowledge wrongdoing.

### 1. Legal Standard

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." As this Court has previously recognized, "[n]either the Second Circuit nor the Supreme Court has definitively determined whether the Eleventh Amendment is to be understood as a bar to subject matter jurisdiction or is 'more appropriately viewed as an affirmative defense.'" *Mallison v. Conn. Office of Early Childhood*, 634 F. Supp. 3d 21, 30 n.2 (D. Conn. 2022) (quoting *Ripa v. Stony Brook Univ.*, 808 F. App'x 50, 50 n.1 (2d Cir. 2020) (summary order)); *see also Allco Fin. Ltd. v. Roisman*, No. 22-2726, 2023 WL 4571965, at *1 (2d Cir. July 18, 2023) (summary order).  The Court believes that the opening phrase of the Eleventh Amendment, which provides that the "[j]udicial power of the United States shall not be construed to extend" to certain suits, suggests that the Amendment limits the subject matter jurisdiction of the Court, making the State Defendants' motion to dismiss for lack of subject matter jurisdiction proper. *See Makarova*, 201 F.3d at 113 (a case is properly dismissed for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it").  Plaintiff has the burden of proving, by a preponderance of the evidence, that subject matter jurisdiction exists. *Cooke v. United States*, 918 F.3d 77, 80 (2d Cir. 2019).

The Eleventh Amendment generally bars private individuals from suing states—including arms of the state and state agents acting in their official capacities—unless one of a few specific

15

exceptions to the rule of immunity applies. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985); *Tonina v. Conn. Dep't of Revenue Servs.*, 851 F. App'x 273, 274 (2d Cir. 2021) (summary order). There are three recognized exceptions to Eleventh Amendment immunity: (1) when a state consents to a lawsuit; (2) when Congress abrogates a state's Eleventh Amendment immunity; or (3) when the lawsuit seeks prospective injunctive relief against state officials—otherwise known as the *Ex parte Young* exception. *See CSX Trans., Inc. v. N.Y. St. Off. of Real Prop. Servs.*, 306 F.3d 87, 95, 98 (2d Cir. 2002); *see also Ex parte Young*, 209 U.S. 123 (1908).

The *Ex parte Young* doctrine provides that the Eleventh Amendment bar is lifted where "prospective injunctive relief" is sought in a suit against a state official to "'end a continuing violation of federal law.'" *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 73 (1996) (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)). Prospective relief designed to end violations of federal law is "necessary to vindicate the federal interest in assuring the supremacy of that law," whereas a remedy that serves only the interests of compensation or deterrence is "'insufficient to overcome the dictates of the Eleventh Amendment.'" *Ward v. Thomas*, 207 F.3d 114, 119 (2d Cir. 2000) (quoting *Green*, 474 U.S. at 68). Thus, suits against state officials in their official capacities for damages remain barred by the Eleventh Amendment, *see Will v. Mich Dep't of State Police*, 491 U.S. 58, 71 (1989); *Huminski v. Corsones*, 396 F.3d 53, 70 (2d Cir. 2005), as do suits seeking declaratory relief for past harms, *T.W. v. New York State Bd. of L. Examiners*, 110 F.4th 71, 92 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 2700 (2025), but suits seeking prospective injunctive relief generally may proceed.

### 2. Discussion

To the extent Plaintiff's claims in the original complaint are asserted against state agencies and state employees in their official capacities for money damages, they are barred as a matter of law by the immunity afforded under the Eleventh Amendment, as no exception applies. *See Will*,

16

491 U.S. at 71; *Huminski*, 396 F.3d 70; *Rzayeva v. United States*, 492 F. Supp. 2d 60, 73 (D. Conn. 2007).  Here, the State has not waived Eleventh Amendment immunity and Plaintiff does not contend the immunity has been abrogated by federal statute.  Plaintiff seeks several types of monetary relief, including: a refund of bond money, attorney's fees (presumably, related to her state court proceedings, as she is proceeding *pro se* and thus has not incurred any attorneys' fees in relation to this federal suit), and damages compensating Plaintiff for property damage, lost animal adoption fees, and missing jewelry.  All are clearly requests for monetary relief; thus, all are barred as to the official-capacity State Defendants, including the state agencies.[10]

Plaintiff's request for a public apology and acknowledgment of wrongdoing by the State is likewise barred by the Eleventh Amendment.  The *Ex parte Young* exception to Eleventh Amendment immunity, which excludes suits for "prospective injunctive relief" against state officials acting in their official capacities from the Eleventh Amendment bar, does not extend to retrospective relief.  *T.W.*, 110 F.4th at 92.  Plaintiff's request is purely retrospective and thus cannot be asserted against the state (or its employees acting in an official capacity).  *See id.*  And, in any event, it is not clear that the Court has the power to order relief in the form of an apology. *See Barrett v. Marquez*, No. 3:25-CV-00022 (VAB), 2025 WL 1424921, at *5 n.7 (D. Conn. May 16, 2025) (an apology "is not a remedy that this Court has the power to order, and so, this Court cannot order Defendant to apologize").

Eleventh Amendment immunity therefore bars Plaintiff's claims for damages and retrospective relief against the official-capacity State Defendants, including the Defendant agencies.

---

[10] To the extent Plaintiff's request for the waiver of animal care fees accumulated in relation to state custody of the animals is properly categorized as prospective relief sought under the Eighth Amendment—and thus not barred by the Eleventh Amendment—it is barred by the *Rooker-Feldman* doctrine, for the reasons expressed below.

C. *Rooker-Feldman* Doctrine

Pursuant to the *Rooker-Feldman* doctrine, the Court lacks jurisdiction to consider any claims flowing from injuries allegedly caused by the state civil proceedings. Therefore, the claims related to Plaintiff's requests for the return of the seized animals, the waiver of fees related to their care, and the alleged violations of her right to a jury trial and due process rights in the state civil proceedings, must be dismissed for lack of subject matter jurisdiction.

1. *Legal Standard*

The *Rooker-Feldman* doctrine applies to bar federal court review of final state court decisions. *See generally Rooker v. Fid. Trust. Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). "Under the *Rooker–Feldman* doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84 (2005)). There are four requirements for the application of *Rooker-Feldman*: "(1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites . . . review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced." *Vossbrinck*, 773 F.3d at 426 (citing *Hoblock v. Albany Cnty. Bd. of Elecs.*, 422 F.3d 77, 85 (2d Cir. 2005) (internal quotations omitted)).

2. *Discussion*

Under the *Rooker-Feldman* doctrine, the Court lacks jurisdiction to consider Plaintiff's claims for injury caused by a final state court judgment. The doctrine thus bars Plaintiff's request for the return of the seized animals and a waiver of fees associated with the animals' care, as well as her jury trial and due process claims related to the state civil proceeding. All four elements of the *Rooker-Feldman* test are met here.

18

First, Plaintiff lost her civil case in state court, which has been litigated through denial of a writ of *certiorari* to the United States Supreme Court. *State ex rel. Dunn v. Connelly*, 228 Conn. App. 458, *cert. denied*, 350 Conn. 933 (2024), *cert denied* 146 S. Ct. 119, 2025 WL 2823830 (U.S., Oct. 6, 2025).

Second, Plaintiff complains that the judgment against her caused injury. Broadly construed, Plaintiff's complaint alleges that her civil proceedings were instituted after a search that violated her Fourth Amendment rights; that state officials damaged or deprived her of her property while executing her arrest, also in violation of the Fourth Amendment; that excessive fines were imposed against her without due process of law, violating her Fifth, Eighth, and Fourteenth Amendment rights; that animals were taken from her possession in violation of her Eighth and Fourteenth Amendment rights; and that she was deprived of her right to a jury trial and due process in the state civil proceedings, in violation of the Seventh and Fourteenth Amendments. To the extent these are cognizable constitutional injuries, many of them flow directly from the state court judgment that vested custody of the animals in the State and imposed fees upon her, in alleged violation of her constitutional rights. Specifically, the seizure and deprivation of her animals and the eventual death of some of them, the fines imposed, and the claimed violations of her jury trial and due process rights are injuries fairly characterized as caused by the state court's judgment against her. *See Weissbrod v. Gonzalez*, 576 F. App'x 18, 19 (2d Cir. 2014) ("[Plaintiff] complains principally of injuries caused by a state court judgment ordering her to pay a fine . . . Yet the *Rooker–Feldman* doctrine bars any attempt by [Plaintiff] to disturb these disciplinary orders."); *Koziel v. City Ct. of Yonkers*, 351 F. App'x 470, 471 (2d Cir. 2009) (*Rooker-Feldman* doctrine applied to plaintiff's claim that the City of Yonkers improperly imposed a fine for traffic violations); *Phifer v. City of New York*, 289 F.3d 49, 57, 60–

19

61 (2d Cir. 2002) (holding that challenges to family court's final custody, neglect, and visitation findings were precluded by *Rooker-Feldman*, and that warrantless seizure claim was likewise barred because the state court's decision "in essence decided" that the seizure was not unlawful).

One category of Plaintiff's claims escapes application of the *Rooker-Feldman* doctrine: her Fourth Amendment claims related to the warrantless entry onto her property and resulting search on March 23, 2022. As compared to the seizure of the animals that occurred a couple of days later in connection with her arrest, the allegedly unlawful search is not addressed by the state court's judgment, and Plaintiff's alleged injuries from the search flow from Defendants' actions, not the state court judgment. *See Worthy–Pugh v. Deustche Bank Nat'l Tr. Co.*, No. 3:14-CV-1620 (AWT), 2016 WL 2944535, at *5 (D. Conn. Jan. 29, 2016), *aff'd sub nom. Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co.*, 664 F. App'x 20 (2d Cir. 2016) (where the alleged injury "took place prior to the entry of the state court judgment," it was "not barred by the *Rooker–Feldman* doctrine").

Third, the primary purpose of the civil action was to resolve the question of whether Plaintiff or the State should be the animals' custodian. Thus, in requesting that the Court return the seized animals to her possession and waive fees associated with their care in the custody of the State—and to determine whether her Seventh and Fourteenth Amendment rights were violated in the state court proceedings—Plaintiff unquestionably seeks for the judgment to be reviewed and overturned. Indeed, she requests this explicitly. *See* ECF No. 20 at 9–10 ("The only solution . . . is for the criminal charges to be dropped, *the civil court judgment to be reversed and her animals to be returned home where they belong*.") (emphasis added). Such efforts are properly directed to the State's appellate courts, not the federal district courts. *Gill v. Mercy Coll.*, No. 17-CV-1769 (NSR), 2018 WL 1940426, at *3 (S.D.N.Y. Apr. 23, 2018) ("The *Rooker-Feldman* doctrine

20

'denies federal district courts . . . jurisdiction over cases that essentially amount to appeals of state court judgments.'") (citation omitted), *aff'd sub nom. Gill v. New York City Comm'n on Hum. Rts.,* 763 F. App'x 128 (2d Cir. 2019) (summary order).

Finally, the state judgment was rendered in December of 2022, more than two years before Plaintiff commenced this action in federal court.  Accordingly, the Court lacks jurisdiction over the Fifth, Seventh, Eighth, and Fourteenth Amendment claims, to the extent they complain of injuries flowing from the state civil judgment and seek that it be overturned.  *Vossbrinck*, 773 F.3d at 426.

Plaintiff's assertion that her claims fall within an exception to the *Rooker-Feldman* doctrine, *see, e.g.*, ECF No. 53 at 2, 13, is unavailing.  It is true that, even though a "'state court decision is not reviewable by lower federal courts,' a 'statute or rule governing the decision may be challenged in a federal action.'"  *Reed v. Goertz*, 598 U.S. 230, 235 (2023) (quoting *Skinner v. Switzer*, 562 U.S. 521, 532 (2011)).  But despite Plaintiff's effort to recast her claims as challenging a state statute, that is not what her original complaint alleges.  She explicitly seeks reversal of the state civil court judgment and does not meaningfully allege that Connecticut's animal welfare laws are unconstitutional.  Thus, the Court rejects this argument.  *See Feldman*, 460 U.S. at 486 (noting that United States District Courts "do not have jurisdiction . . . over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional," as "[r]eview of those decisions may be had only in" the U.S. Supreme Court).

Accordingly, to the extent Plaintiff seeks relief in the form of reversal or modification of the state court civil judgment, Plaintiff's Fifth, Seventh, Eighth, and Fourteenth Amendment claims, and parts of her Fourth Amendment claims, are barred.

D. *Younger* Abstention

Next, the *Younger* abstention doctrine counsels against exercising jurisdiction over any requests for relief that would interfere with Plaintiff's state criminal proceedings, including the request that Plaintiff's charges be dropped.

### 1. Legal Standard

*Younger v. Harris*, 401 U.S. 37 (1971) and its progeny require "federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Const. Corp. v. McGowan*, 282 F3d 191, 198 (2d Cir. 2002). The doctrine was "born in the context of state criminal proceedings" and is based on the "notion that, in the ordinary course, 'a state proceeding provides an adequate forum for the vindication of federal constitutional rights.'" *Id.* (quoting *Cullen v. Fliegner*, 18 F.3d 96, 103 (2d Cir. 1994).[11] Such restraint "prevent[s] erosion of the role of the jury and avoid[s] a duplication of legal proceedings and legal sanctions," and is "'reinforced' by the notion of 'comity,' that is, a proper respect for state functions." *Sprint Comms., Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) ("*Sprint*") (quoting *Younger*, 401 U.S. at 44). *Younger* is "not a jurisdictional bar based on Article III requirements, but instead a prudential limitation on the court's exercise of jurisdiction grounded in equitable considerations of comity." *Kaufman v. Kaye*, 466 F.3d 83, 88 n.1 (2d Cir. 2006) (quoting *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003)).

Before invoking *Younger*, a federal court may consider three additional factors laid out in *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 432 (1982),

---

[11] The *Younger* principle was later expanded to counsel abstention not only when there are parallel state criminal proceedings, but also during the pendency of certain civil proceedings. *See Huffman v. Pursue, Ltd.*, 420 U.S. 592, 594 (1975). Specifically, "'federal courts should not enjoin pending state' proceedings" in three "exceptional circumstances": "1) state criminal prosecutions, 2) certain civil enforcement proceedings, or 3) civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *McPherson v. Lamont*, 20-CV-534 (JBA), 457 F. Supp. 3d 67, 82 (D. Conn. 2020) (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989)).

that further favor abstention:  whether there is "(1) an ongoing state judicial proceeding that (2) implicates important state interests and (3) provides an adequate opportunity to raise federal challenges." *Cavanaugh v. Geballe*, 28 F.4th 428, 432 (2d Cir. 2021) (quoting *Sprint*, 571 U.S. at 81 (cleaned up)) (the "*Middlesex* factors").

Two "tightly defined exceptions" have developed in which *Younger* does not apply: the bad faith exception and the extraordinary circumstances exception.  *Diamond "D" Constr. Corp.*, 282 F.3d at 197–199 (despite the "strong policy in favor of abstention, a federal court may nevertheless intervene in a state proceeding upon a showing of 'bad faith, harassment or any other unusual circumstance that would call for equitable relief'") (quoting *Younger*, 401 U.S. at 54).  The bad faith exception applies "in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction."  *Id.* at 198 (quoting *Perez v. Ledesma*, 401 U.S. 82, 85 (1971)).  Relevant here, "[t]o invoke th[e bad faith] exception, the federal plaintiff must show that the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive."  *Id.* at 199.  "The 'subjective motivation of the state authority in bringing the proceeding is critical to, if not determinative of,' the bad faith inquiry." *Id.*

The extraordinary circumstances exception applies only in the very rare instance when the state court is "incapable of fairly and fully adjudicating the federal issues before it."  *Id.* at 201 (quoting *Kugler v. Helfant*, 421 U.S. 117, 124 (1975)).  If either of the exceptions apply, "the need for deference to state proceedings" is "reduc[ed]."  *Cullen*, 18 F.3d at 104.  A plaintiff bears the burden of proving an exception applies.  *Diamond "D" Const. Corp.*, 282 F.3d at 198.

### 2. Discussion

The Court finds that *Younger* abstention is appropriate in this case, where Plaintiff requests that the Court enjoin her ongoing state criminal proceedings.  *See* ECF No. 20 at 10 (requesting

that the criminal charges be "dropped" and "all fees . . . waived"). Construing the complaint broadly, Plaintiff requests this relief to remedy injuries suffered as a result of the alleged unlawful search of her property and seizure of her animals, and the failure to provide a speedy and fair jury trial under the Fourth and Sixth Amendments.

There is no dispute that this case falls into the first *Younger* category as it involves an ongoing state criminal proceeding, a fact Plaintiff mentions in her complaint. *Id.* at 9; *see Davis v. Lansing*, 851 F.2d 72, 76 (2d Cir. 1988) ("There is no question that [an] ongoing prosecution implicates important state interests: *Younger* itself settled the importance of the state's interest in criminal proceedings."); *Sprint*, 571 U.S. at 72 ("When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution.").

To the extent the *Middlesex* factors are relevant to this analysis, they further weigh in favor of abstention. First, as noted, the state criminal proceeding remains ongoing. Second, the state proceedings in this case "implicate[ ] important state interests." *Sprint*, 571 U.S. at 81 (citing *Middlesex*, 457 U.S. at 102). As the Second Circuit has recognized, "it is axiomatic that a state's interest in the administration of criminal justice within its borders is an important one." *Hansel v. Town Ct. for Town of Springfield, N.Y.*, 56 F.3d 391, 393 (2d Cir. 1995).

Third, the *Younger* doctrine itself arises out of the principle that "[a] state criminal proceeding ordinarily provides an adequate forum to raise federal constitutional challenges to the prosecution." *Randolph v. Vance*, No. 19-CV-6377 (CM), 2019 WL 3564562, at *2 (S.D.N.Y. Aug. 5, 2019) (citing *Cullen*, 18 F.3d at 103). Thus, "[a]bsent evidence to the contrary, federal courts must presume the state courts will hear a plaintiff's constitutional challenge." *Kelsey v. Sherman*, No. 22 CV 1934 (VB), 2024 WL 3498052, at *7 (S.D.N.Y. July 22, 2024), *appeal dismissed,* No. 24-2053, 2025 WL 2233813 (2d Cir. Feb. 20, 2025) (citing *Spargo*, 351 F.3d at

24

77).   To claim otherwise, Plaintiff must assert facts establishing the inadequacy of her state court proceedings.  *Id.* (citing *Spargo*, 351 F.3d at 77).  She has not done so.  The complaint does not contain any allegations that Plaintiff is unable to raise her constitutional concerns in the state court proceedings; indeed, with respect to her request for a jury trial, it alleges the opposite, given that she contends she requested a jury trial years ago.[12]  And, in any event, it is clear that "the Connecticut Superior Court . . .  is a court of general jurisdiction with the power to hear claims under the U.S. Constitution."  *Abric v. Rowland*, No. 3:98-CV-1929 (CFD), 1998 WL 928420, at *3 (D. Conn. Dec. 30, 1998).  Plaintiff appears to assert that her criminal charges should be dismissed because her Fourth and Sixth Amendment rights have been violated throughout the course of the proceedings.  Criminal defendants in Connecticut are regularly permitted to raise such claims in the criminal proceedings themselves, including on appeal.

Plaintiff invokes the bad faith exception to *Younger* abstention, but has not met the burden of showing it applies here.  Where a "complaint fails to allege any evidence of bad faith or if it does so only in the most conclusory manner, a court can decide whether to invoke the bad faith exception to *Younger* abstention on the basis of the complaint alone."  *Wilson v. Emond*, No. 3:08 CV 1399 (MRK), 2009 WL 1491511, at *2 (D. Conn. May 28, 2009), *aff'd,* 373 F. App'x 98 (2d Cir. 2010) (summary order).  Plaintiff has not shown that the 71 counts of misdemeanor animal cruelty were instances of "proven harassment" or were undertaken by the state in "bad faith without hope of obtaining a valid conviction" against Plaintiff.  *Diamond "D" Constr. Corp.*, 282 F.3d at 199 (quoting *Perez*, 401 U.S. at 85).  To the contrary, Plaintiff merely makes a claim of bad faith without actually alleging how Defendants' action in the criminal proceeding against her

---

[12] Although Plaintiff complains that she did not have sufficient opportunity to present her arguments at the state court *civil* hearing on April 29, 2022, she does not allege that she cannot raise her constitutional concerns in her state *criminal* proceeding.

was "initiated with and . . . animated by retaliatory, harassing, or illegitimate motive." *Id.* Furthermore, the State obtained a favorable outcome against Plaintiff in its civil case seeking permanent custody of her animals, finding that the animals were "abused, neglected, and cruelly treated." ECF No. 51-4 at 2; *State ex rel. Dunn v. Thirty-Three Dogs*, Docket No. HHD CV-22-6154457-S, 2022 2022 WL 17817210 at *8 (Conn. Super. Ct. Dec. 13, 2022) (Budzik, J.). While the burdens of proof for a civil case and a criminal case are, of course, different, the civil decision lends support to the idea that state has reasonable expectations of obtaining a valid conviction. For these reasons, Plaintiff has not met her burden of demonstrating that the bad faith exception applies.

Generally, where *Younger* abstention applies to a plaintiff's claims, those claims must be dismissed. *Kirschner v. Klemons*, 225 F.3d 227, 231 (2d Cir. 2000). Importantly, however, *Younger* abstention "originated as a doctrine" requiring abstention from cases that would necessitate the issuance of equitable relief, and may have less force in a case seeking monetary damages because of the lower likelihood, in those matters, of "unacceptable interference with the ongoing state proceeding." *See id.* at 238 ("*Younger* abstention is not appropriate with respect to [the plaintiff's] claim for money damages under § 1983 against [the defendant] because it is a claim for money damages and not for declaratory or injunctive relief"). Thus, while the Court must dismiss Plaintiff's requests for injunctive and declaratory relief on *Younger* abstention grounds, her requests for monetary damages need not be dismissed on such grounds.

It could be appropriate to stay the claims seeking money damages, however. *Id.*; *Torres v. Gaines*, 130 F. Supp. 3d 630, 637 (D. Conn. 2015) (reasoning that a stay would be appropriate under similar circumstances because "the resolution of the claims for monetary damages still places the Court in the awkward position of having to question the . . . sum and substance" of a

plaintiff's constitutional claims, which could be litigated in the ongoing state proceeding); *Torres v. Off. of Adult Prob.*, No. 3:22-CV-00883 (SVN), 2023 WL 9061824, at *9 (D. Conn. Nov. 27, 2023), *aff'd,* No. 23-8084, 2025 WL 3687768 (2d Cir. Dec. 19, 2025), and *aff'd,* No. 23-8084, 2025 WL 3761417 (2d Cir. Dec. 30, 2025).  Such an approach would be particularly appropriate as to Municipal Defendant William Bell.  While Plaintiff's Sixth Amendment claim is not properly directed at the Municipal Defendants since they are not alleged to have been involved in her criminal court proceedings, she alleges that Municipal Defendant William Bell was involved in the allegedly unlawful search on March 23, 2022, in violation of her Fourth Amendment rights (which is potentially encompassed in her criminal proceedings).  *See* ECF No. 20 at 8.

Were Plaintiff proceeding on her original complaint, the Court would thus consider staying the Fourth Amendment claim for monetary damages against Defendant Bell, pending resolution of the state criminal proceedings.  But given the Court's resolution of the motion for leave to amend—addressed below—it need not reach this issue because the amended complaint does not assert any cognizable claims against Defendant Bell.

E.  Remaining Arguments for Dismissal

1. *State Defendants' Arguments*

The State Defendants argue that Defendant Judge Matthew Budzik is entitled to absolute judicial immunity and Defendants Tong and Salton are entitled to absolute prosecutorial immunity. *See* ECF No. 51 at 17–21.  With respect to Judge Budzik, judicial immunity would bar Plaintiff's claims for monetary damages—brought against Judge Budzik in an individual capacity—resulting from actions Judge Budzik took in his capacity as a judicial officer.  *See Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009).  But as the State Defendants maintain that Judge Budzik was not served in an individual capacity—a position with which the Court agrees—their judicial immunity arguments are inapposite with respect to the original complaint.  Likewise, prosecutorial immunity

27

protects prosecutors from suits for damages when they are sued in their individual capacities, which is not the case here. *See Bouchard v. Olmsted*, 775 F. App'x 701, 704 (2d Cir. 2019) (summary order) ("The district court thus properly found that all of Bouchard's claims against the individual defendants [three prosecutors] *in their individual capacities* were barred by . . . absolute prosecutorial immunity."). For the reasons explained above, however, Eleventh Amendment immunity bars Plaintiff's claims for damages or for retrospective relief against Judge Budzik and Defendants Tong and Salton in their official capacities.

### 2. *Municipal Defendants' Arguments*

The Municipal Defendants are correct that Plaintiff fails to make any allegations about Defendant Hebron Town Manager Andrew Tierney's liability in the original complaint. Plaintiff's claim of supervisory liability advanced in her opposition briefing (even if the Court were to consider it) fails. *See Condon*, 747 F. Supp. 3d at 365–66 (D. Conn. 2024) ("[I]t is not enough to show that a defendant ultimately supervised those who allegedly violated plaintiff's constitutional rights").

With respect to Defendant Hebron Police Officer Ricardo Martinez, Plaintiff alleges he and a state trooper "kicked in the front door" of her home and arrested her on March 25, 2022, and that Martinez and Trooper Reed refused to allow Plaintiff into her house to retrieve a credit card to post bond. But she fails to connect these actions to any plausible constitutional violation committed by Officer Martinez. Thus, any claims against Officer Martinez in the original complaint would also fail.

### F. In Summary

Based on the Court's resolution of Plaintiff's motion for leave to amend, as discussed below, it does not issue any orders of dismissal with respect to the original complaint, and instead

28

denies the motions to dismiss at moot.  Its analysis is set forth herein to guide Plaintiff in the event she chooses to file a second amended complaint, as provided for below.

## III.    LEAVE TO AMEND

The Court now addresses Plaintiff's pending motion for leave to amend and the attached proposed amended complaint, ECF No. 62.  As explained below, Count One of the amended complaint is not futile, but the other counts are.  Plaintiff will be given the option to proceed on Count One or to file a second amended complaint consistent with this ruling and the relevant Federal Rules.

### A.  Legal Standard

A plaintiff may amend her complaint once, as a matter of course, within 21 days after serving it, or within 21 days after the service of a responsive pleading or a motion to dismiss under Fed. R. Civ. P. 12(b), (e), or (f).  Fed. R. Civ P. 15(a)(1).  Outside of these enumerated circumstances, however, a plaintiff seeking to amend must either move the court for leave or obtain the opposing party's written consent for an amendment.  Fed. R. Civ. P. 15(a)(2).

Rule 15(a)(2) is a generally lenient standard, under which "[t]he court should freely give leave [to amend] when justice so requires." *Id.*  Courts will deny a proposed amendment under Rule 15(a)(2) only "upon a showing of 'undue delay, bad faith, dilatory motive, or futility.'" *Sacerdote v. New York University*, 9 F.4th 95, 115 (2d Cir. 2021).  An amendment is futile if it "could not withstand a motion to dismiss" under Rule 12(b)(6).  *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 164–65 (2d Cir. 2015) (citation omitted).  "Put differently, a proposed claim is futile if, accepting the facts alleged by the party seeking amendment as true and construing them in the light most favorable to that party, it does not 'plausibly give rise to an entitlement to relief.'" *Brach Fam. Found., Inc. v. AXA Equitable Life Ins. Co.*, No. 16-CV-740 (JMF), 2018 WL 1274238, at *1 (S.D.N.Y. Mar. 9, 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  Allegations

29

that are "legal conclusions, [or] threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not alone be sufficient to survive a motion to dismiss. *Balintulo*, 796 F.3d at 165 (citation omitted). "The party opposing a motion to amend bears the burden of establishing that amendment would be futile." *Brach Fam. Found., Inc.*, 2018 WL 1274238, at *1.

B. Discussion

Plaintiff sought to amend her complaint after both motions to dismissed had been fully briefed and after the time to amend as a matter of right had elapsed.  The Court thus evaluates her motion under the standard set by Fed. R. Civ. P. 15(a)(2), and concludes the proposed amendment is futile, in part.

Plaintiff requests leave to amend her complaint to assert claims under 42 U.S.C. Sec. 1983, and assert all claims against all defendants in their individual and official capacities.  *See* ECF No. 62 & 62-1.  Plaintiff does not assert any causes of action beyond those in the original complaint, and, indeed, significantly narrows the claims she is pursuing.  The proposed amended complaint alleges the same basic facts as the original complaint—though in numbered paragraphs—and contains five counts: (1) Fourth Amendment violations against Defendants Reed, Samae, Coit, Cormier, and Ruppar based on an unlawful entry on March 23, 2022; (2) Fourteenth Amendment Due Process Clause violations against unspecified Defendants, "by conducting sham proceedings without proper notice and participation"; (3) Eighth Amendment Excessive Fines Clause violations, likely directed at Judge Budzik but with no particular Defendant specified; (4) "Judicial Immunity Exception," and (5) "Ongoing Constitutional Violations" based on Defendants' continued unlawful possession of Plaintiff's animals and demand for excessive fees.  ECF No 62-1 at 16–18.  Given that Plaintiff articulates specific causes of action, the Court addresses whether those causes of action may proceed; it does not read causes of action into the complaint that may

be suggested by the facts, but are not specifically identified by Plaintiff.  Indeed, the Court interprets Plaintiff's narrowing of her claims as an indication that she is abandoning the many other theories and claims espoused in her original complaint.[13]

In addition to the relief sought in the original complaint, Plaintiff's proposed amended complaint seeks a declaratory judgment that Conn. Gen. Stat. § 22-329 is facially unconstitutional, a declaration that Defendants' actions violated Plaintiff's constitutional rights, injunctions against further enforcement of Conn. Gen. Stat. § 22-329, an injunction ordering "proper constitutional procedures for any future animal welfare proceedings," compensatory damages of no less than $500,000, and punitive damages.  ECF No. 62-1 at 19.

The Court holds that Plaintiff's amended complaint is not futile (in part) as to Count One, which asserts a Fourth Amendment violation under § 1983 against Defendants Reed, Samae, Coit, Cormier, and Ruppar based on an unlawful entry on March 23, 2022.  To the extent this claim is asserted against these Defendants in their official capacity, the claim is futile for the reasons expressed above with respect to Eleventh Amendment immunity.  But to the extent it is asserted against them in their individual capacities for damages, it would not be barred by the Eleventh Amendment.  And as discussed above, Plaintiff's claimed injury for this allegedly unlawful search does not result from the state court's judgment, so it would not be barred by *Rooker-Feldman*.  Nor does any request for damages flowing from the allegedly unlawful search that occurred two days

---

[13] Plaintiff submitted an overlength reply brief, ECF No. 68, which reads like another amended complaint and suggests that she is attempting to advance several claims beyond those alleged in the proposed amended complaint at ECF No. 62-1.  The Court rejected this reply brief for violations of the Local Rules.  *See* Order, ECF No. 69.  Plaintiff then submitted a revised reply brief that also appears to advance new claims not pleaded in ECF No. 62-1.  *See* ECF No. 73 (identifying, for instance, Count One as a "Sixth Amendment violation (denial of counsel)" and Count Three as "State law claims for false imprisonment").  But a reply brief is not a proper method for adding new claims.  Plaintiff's approach makes the operative claims a moving target, which is unfair to Defendants.  Nonetheless, as Plaintiff is proceeding *pro se,* the Court will afford Plaintiff a final opportunity to amend as described in the conclusion of this ruling, in the event that she inadvertently omitted claims from her proposed amended complaint at ECF No. 62-1 that she intended to pursue.

31

before Plaintiff's arrest implicate her pending criminal proceedings, such that *Younger* abstention would be warranted. The State Defendants make no other arguments for dismissal specific to this claim. Thus, Count One of the amended complaint may proceed against Defendants Reed, Samae, Coit, Cormier, and Ruppar in their individual capacities for damages.

The Court construes Count Two as being brought against Defendant Judge Budzik, since Plaintiff claims it relates to "conducting sham proceedings without proper notice and participation" and alleges that Plaintiff was not present during substantive portions of a hearing that occurred before Judge Budzik on April 29, 2022. *See* ECF No. 62-1 at 17. To the extent this claim is brought against Defendant Budzik in his official capacity for damages or retrospective relief, it is barred by the Eleventh Amendment. And to the extent it is alleged against Defendant Budzik in an individual capacity, it is futile because of the application of judicial immunity, for the reasons explained above. Although Plaintiff's Count Four—labeled a "judicial immunity exception"— attempts to allege that Judge Budzik proceeded in "clear absence of jurisdiction" and engaged in a "non-judicial conspiracy and administrative failures," her allegations are merely conclusory. There is nothing in the amended complaint to suggest that Judge Budzik was acting in the clear absence of jurisdiction during the state court civil proceedings, nor that he was engaged in a non-judicial act. The actions Plaintiff challenges are quintessentially judicial acts: ruling on a pending case. They are not administrative acts, such as personnel matters. *See Bliven*, 579 F.3d at 210. Thus, Count Two—and Count Four, which is not itself a cause of action—are futile.

Count Three alleges that "Defendants" imposed excessive fines. The Court construes this claim as being brought against Judge Budzik as well, since he imposed the fines, even though Plaintiff does not identify him specifically. Count Three fails because Plaintiff is plainly

challenging Judge Budzik's orders in the state civil action, which challenges are barred by the *Rooker-Feldman* doctrine for the reasons discussed above.

Finally, Plaintiff alleges "ongoing constitutional violations" in Count Five. This is not a cognizable cause of action, and is therefore futile.

Plaintiff asserts no causes of action against many of the Defendants named in her amended complaint, including all of the Municipal Defendants. Thus, the Court dismisses those Defendants not specifically named in any counts. Additionally, while Plaintiff seeks a declaration that Conn. Gen. Stat. § 22-329a is unconstitutional on its face and as applied, she does not state a separate cause of action seeking to declare that statute unconstitutional and, in any event, does not plausibly allege facts to suggest that it is, in fact, unconstitutional. Thus, this request for relief is futile.

In sum, the proposed amended complaint at ECF No. 62 is futile except with respect to Count One, insofar as it is alleged against Defendants Reed, Samae, Coit, Cormier, and Ruppar in their individual capacities for damages. The Clerk is directed to terminate all other Defendants from this action.

As noted in a footnote above, the Court understands that Plaintiff's proposed amended complaint may be underinclusive of the claims she wishes to advance. Thus, the Court will afford her two options: (1) she may proceed immediately only on her claim in Count One of the amended complaint against the Defendants named above, in which case she will be required to effect individual capacity service on those Defendants; or (2) she may file a second amended complaint by **April 21, 2026,** attempting to set forth *all* potential claims she wishes to pursue in this action. Any second amended complaint must contain numbered paragraphs and **specifically identify which Defendants are sued in each cause of action, and on which factual basis**. Any such second amended complaint must also be consistent with this ruling, insofar as it has detailed that

33

claims against Judge Budzik for judicial actions taken in his individual capacity are subject to judicial immunity; that challenges to the state court judgment are barred by *Rooker-Feldman*; and that requests to enjoin the state criminal proceedings are prohibited by the *Younger* abstention doctrine (among other holdings).

## IV.    MOTION FOR PRELIMINARY INJUNCTION

In her motion at ECF No. 74, Plaintiff requests that the Court "order[] Defendants to immediately return the surviving . . . animals" and "enjoin[] Defendants from disposing of, euthanizing, or transferring custody of said animals pending resolution of this litigation." ECF No. 74 at 3.

The Court lacks jurisdiction to grant the requested relief because it is barred by the *Rooker-Feldman* doctrine. Specifically, for the reasons described above, returning the animals seized from Plaintiff's property would necessarily result in the reversal or modification of a state court judgment. *Green v. Mattingly*, 585 F.3d 97, 103 (2d Cir. 2009) (noting that *Rooker-Feldman* would bar a § 1983 action for the return of plaintiff's child following a final order permanently removing the child from her custody). Likewise, directing the manner in which the State may exercise its custody over the seized animals would constitute an impermissible modification of the Superior Court's order, which directs the State to exercise its custody powers in compliance with Conn. Gen. Stat. § 22-329a. *See, e.g., Gill*, 2018 WL 1940426, at *3. No court with proper jurisdiction over Plaintiff's past appeals of this order has seen fit to disturb it. *State ex rel. Dunn v. Connelly*, 228 Conn. App. 458, *cert. denied*, 350 Conn. 933, *cert denied* 146 S. Ct. 119, 2025 WL 2823830. Accordingly, the Court need not reach the merits of Plaintiff's motion. *See Achbani v. Homan*, No. 3:17-CV-1512 (JBA), 2017 WL 4227649, at *5 (D. Conn. Sept. 22, 2017) (denying

34

preliminary injunction without evaluating irreparable harm, likelihood of success on the merits, or the public interest where court lacked subject matter jurisdiction to grant the requested relief).

## V.   CONCLUSION

For the reasons described herein, the State Defendants' motion to dismiss, ECF No. 50, and the Municipal Defendants' motion to dismiss, ECF No. 47, are DENIED as moot.  Plaintiff's motion for leave to amend, ECF No. 62, is GRANTED IN PART.  Plaintiff's motion for a preliminary injunction, ECF No. 74, is DENIED.   The Clerk is directed to docket ECF No. 62-1 as a standalone Amended Complaint.  The Clerk is directed to terminate all Defendants other than Defendants Reed, Samae, Coit, Cormier, and Ruppar in their individual capacities.

Plaintiff has two options in response to this ruling:  (1) she may proceed immediately only on her claim in Count One of the amended complaint in ECF No. 62-1 against the Defendants named above, in which case she will be required to effect individual capacity service on those Defendants; or (2) she may file a second amended complaint by **April 21, 2026,** attempting to set forth *all* potential claims she wishes to pursue in this action.  Any second amended complaint must contain numbered paragraphs and **specifically identify which Defendants are sued in each cause of action, and on which factual basis**.  Any second amended complaint shall also be careful not to advance claims that the Court has stated would be dismissed, or abstained from, under this ruling.

**SO ORDERED** at Hartford, Connecticut, this 31st day of March, 2026.

  */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE